# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| Truauto MC, LLC and <br> TDMC Property Holdings, LLC, <br> <br> Plaintiffs, <br> <br> v. <br> <br> Textron Specialized Vehicles, Inc., White River Marine Group, LLC, and Wells Fargo Commercial Finance, LLC, <br> <br> Defendants. | Civil Action No. 2:19-cv-1381-RMG <br> <br> **ORDER AND OPINION** |

Before the Court is Defendant Textron Specialized Vehicles, Inc.'s motion to dismiss Plaintiffs' Second Amended Complaint (Dkt. No. 64) and Plaintiffs' motion for leave to amend the Second Amended Complaint (Dkt. No. 73). For the reasons set forth below, the Court grants in part and denies in part Defendant's motion to dismiss and denies Plaintiffs' motion for leave to amend.

**I.    Background**

Plaintiffs are companies that do business in Berkeley County, South Carolina. (Dkt. No. 49 ¶¶ 1-2).[1] Doug McElveen and Todd Smith own both businesses. (*Id.* ¶ 11). Around November 15, 2018, McElveen and Smith had a discussion with Cohen Gaskins, the owner of Sportsman Truck & Auto Sales, LLC ("Sportsman"), an E-Z-GO Authorized Dealership and Franchise. (*Id.*). McElveen and Smith expressed their interest in purchasing Sportsman's building and their becoming an E-Z-GO authorized dealer and franchise owner. (*Id.*). E-Z-GO is owned by

---

[1] On a motion to dismiss, the Court is obligated to assume the truth of the facts alleged in the complaint and to view all allegations in a light most favorable to the Plaintiffs as the nonmoving parties.

1

Defendant Textron Specialized Vehicles, Inc. ("TSV") and manufactures golf carts. (*Id.* ¶ 12). Gaskins advised Smith and McElveen that they needed to be in touch with E-Z-GO during the course of the real estate purchase and the transfer and assumption of the inventory and franchise. (*Id.* ¶ 13). Around November 21, 2018, Smith texted John Creech, an E-Z-GO representative, to introduce himself and sent Creech a business plan Smith had created. (*Id.* ¶ 16). Around November 28, 2018, Creech travelled to South Carolina to meet and have dinner with Smith and to discuss the business plan "and the future goals TruAuto had as an authorized E-Z-Go dealer and franchise." (*Id.* ¶ 18). Discussions continued November 29th, 2018, and Creech advised Smith that all E-Z-GO Dealers finance their franchise floorplans with Wells Fargo. (*Id.* ¶ 19).

Around November 30, 2018, Smith finalized the details of the Sportsman purchase with Gaskins. (*Id.* ¶ 20). Around December 3, 2018, Smith confirmed to Creech that the paperwork for E-Z-GO was started and "requested an update on obtaining financing paperwork from Wells Fargo. Creech advised that 'the credit [application] gets the ball rolling with them.'" (*Id.* ¶ 21). Around December 10, 2018, Smith texted Creech, informing him the Sportsman Buy-Sell Agreement was "completed" and Creech responded that he would "get it rolling" and process the paperwork. (*Id.* ¶ 22). From December 11 through December 14, 2018, Smith turned over a series of documents and forms to E-Z-GO, including, but not limited to, personal financial information, business plans, and applications to obtain authorization as a dealer. (*Id.* ¶ 23). Around December 14, 2018, Smith informed Creech he was "starting construction in two weeks," presumably at Sportsman, and asked if Creech saw any issues with the paperwork, to which Creech responded "No, I don't but it just has internal process [sic] and then goes to the bank (Wells Fargo). I'll have a better timeline next week . . . ." (*Id.* ¶ 24). Around December 20, 2018, Creech told Smith that TruAuto was approved to be an E-Z-GO Diamond dealer and that he should "expect an email from

2

Wells Fargo very soon with the required paperwork." (*Id.* ¶ 25). Subsequently, Plaintiffs began to work with Wells Fargo to complete the online Wells Fargo Commercial Distribution Finance application. (*Id.* ¶¶ 27-29). Around January 15, 2019, Plaintiffs submitted a Confidential Credit Application to TSV. (*Id.* ¶ 31).

Around January 17, 2019, Smith texted Creech and expressed his concern because Smith had heard through a friend that White River Marine Group, LLC ("White River") merged with TSV. (*Id.* ¶ 32). Creech responded to Smith that "all is good and can explain . . . there has been some changes and I've been moved to another sales role in the company. We need to have another conference call with your new rep Jeremy." (*Id.*). On January 18, 2019, Jeremy Crane, Plaintiffs' new representative at E-Z-GO, stated "everything was fine with Smith's dealership and not to worry." (*Id.* ¶ 33). During this time, Plaintiffs continued to work on their application with Wells Fargo, and Plaintiffs and Wells Fargo discussed the "two closings that needed to take place," namely the "Real Estate Closing — 'acquisition of the land and facilities' and . . . the Floor Plan Assumption — 'the purchase of the inventory, franchise rights, parts & accessories, and equipment by the new business entity/borrower.'" (*Id.* ¶¶ 35-37). Because the Sportsman closing was approaching, and in order to speed up the process, Plaintiffs agreed to decrease their credit line application with Wells Fargo from $1,100,000.00 to $950,000.00. (*Id.* ¶ 36). Around January 29, 2019, Wells Fargo indicated to Plaintiffs that "we are approving the loan today with conditions (legal paperwork) . . . [TSV] will be notified that a $950,000 credit line has been approved." (*Id.* ¶ 39). Around January 30, 2019, Wells Fargo requested additional information from Plaintiffs to finish preparing the loan and finance agreement. (*Id.* ¶ 40).

Around January 31, 2019, "Smith got a call from one of his friends," indicating that executives from White River had offered Smith's friend "the territory rights to sell Tracker carts

3

because E-Z-Go [sic] is going away." (*Id.* ¶ 42).  Smith told Creech, and Creech responded that "[Creech] spoke with Crane and he did not think that was the case" and would "get answers from the top." (*Id.*).  On February 4, 2019, Smith reached out to Creech again and asked for updates. (*Id.* ¶ 44).  Creech responded, "[Crane's] boss said he was on top of it Friday and would let us know." (*Id.*).  Smith "followed up again later that night" with both Creech and Crane but neither responded. (*Id.*).  On February 5, 2019, a day before closing, Smith texted Creech that the "deal was starting to be very sketchy." (Dkt. No. 49-1 at 39).  Smith continued to reach out to Creech and Creech responded, on February 6, 2019, that "Jeremy was working it this morning with his boss.  They'll have you something today.  I'm letting Jeremy handle since I've been moved.  I've done all I can at this point my friend." (*Id.* at 40).  Around February 6, 2019, Plaintiffs executed the Real Estate Agreement and Transfer and Assumption of Floor Plan with Sportsman, whereby Plaintiffs bought, *inter alia*, Sportsman's E-Z-GO franchise and the associated real estate and floor plan. (Dkt. No. 49 ¶ 49).  Around February 18, 2019, TSV contacted Plaintiffs "regarding the buyout" of Sportsman and offered to send new branding stickers for the golf cart inventory purchased by Plaintiffs. (*Id.* ¶ 52).  That same day, TSV sent Plaintiffs a Dealer Agreement. (*Id.* ¶ 53). On February 19, 2019, TSV voided the agreement. (*Id.* ¶ 54).  Plaintiffs continued to work with Wells Fargo on financing. (*Id.* ¶ 51).  Around February 28, 2019, a Wells Fargo employee visited TruAuto "requesting to take a floor plan inventory for Sportsman." (*Id.* ¶ 58).  Plaintiffs explained "Sportsman no longer owned the building or the inventory," and on March 8, 2019, Gaskins received a letter from Wells Fargo demanding payment in full for the floorplan. (*Id.* ¶¶ 58, 61).

4

**II.     Procedural History**

Plaintiffs filed this action on April 2, 2019 in the Berkeley County Court of Common Pleas against Textron, Inc., White River, and Wells Fargo Commercial Finance, LLC. (Dkt. No. 1-1). Textron, Inc. and White River removed this action on May 10, 2019. (Dkt. No. 1). On September 25, 2019, Plaintiffs filed a First Amended Complaint (the "FAC"), substituting Textron, Inc. with TSV. (Dkt. No. 21). On October 18, 2019, TSV and White River moved to dismiss the FAC.[2] (Dkt. Nos. 26 and 27). On January 28, 2020, the Court granted both parties' motions in full. (Dkt. No. 40). On February 13, 2020, Plaintiffs filed a motion for reconsideration, (Dkt. No. 44), which the Court denied, (Dkt. No. 45). On February 28, 2020, Plaintiffs filed a motion to amend the FAC, (Dkt. No. 49), which the Court granted, (Dkt. No. 62).

In their Second Amended Complaint (the "SAC") Plaintiffs assert, against TSV[3], claims for breach of contract, fraud and misrepresentation, constructive fraud, negligence, negligent misrepresentation, promissory estoppel, and violation of the South Carolina Unfair Trade Practices Act ("SCUPTA").

On October 5, 2020, TSV moved to dismiss the SAC in its entirety. (Dkt. No. 64). On October 29, 2020, Plaintiffs filed a response in opposition, (Dkt. No. 70), to which TSV filed a reply on November 5, 2020, (Dkt. No. 71).

---

[2] In the FAC, against TSV and White River, Plaintiffs brought claims for breach of contract, fraud and misrepresentation, constructive fraud, breach of contract accompanied by a fraudulent act, breach of fiduciary duty, interference with a contractual relationship, negligence, negligent misrepresentation, promissory estoppel, South Carolina Unfair Trade Practices Act violation, and Business Opportunity Sales Act violation.

[3] While White River is listed as a defendant in the SAC's caption, Plaintiffs do not assert any causes of action against White River, (Dkt. No. 49), nor in-fact pursue any claims against White River, *see* (Dkt. No. 70). Therefore, White River is dismissed as a party defendant.

5

On November 16, 2020, Plaintiffs filed a motion for leave of the Court to amend the SAC. (Dkt. No. 73). The proposed Third Amended Complaint is identical to the SAC except that it adds a cause of action against TSV for violation of the South Carolina Dealers Act (the "Dealers Act"), S.C. Code §56-15-40. TSV opposes Plaintiffs' motion. (Dkt. No. 74).

The parties' motions are fully briefed and ripe for disposition.

### III. Legal Standards

#### a. Fed. R. Civ. P. 12(b)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits the dismissal of an action if the complaint fails "to state a claim upon which relief can be granted." Such a motion tests the legal sufficiency of the complaint and "does not resolve contests surrounding the facts, the merits of the claim, or the applicability of defenses. . . . Our inquiry then is limited to whether the allegations constitute 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citations omitted). In a Rule 12(b)(6) motion, the Court is obligated to "assume the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations." *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship.*, 213 F.3d 175, 180 (4th Cir. 2000). However, while the Court must accept the facts in a light most favorable to the non-moving party, it "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Id.*

To survive a motion to dismiss, the complaint must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although the requirement of plausibility does not impose a probability requirement at this stage, the complaint must show more than a "sheer possibility that a defendant has acted unlawfully."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint has "facial plausibility" where the pleading "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### b. Fed. R. Civ. P. 9(b)

A plaintiff alleging fraud is held to a higher standard and "must state with particularity the circumstances" constituting the fraud. Fed. R. Civ. P. 9(b). The circumstances of the fraud are "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentations and what he obtained thereby." *Weidman v. Exxon Mobil Corp.*, 776 F.3d 214, 219 (4th Cir. 2015) (internal quotation marks omitted). "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). The second sentence of Rule 9 "allows conclusory allegations of a defendant's knowledge as to the true facts and of defendant's intent to deceive." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999).

### c. Fed. R. Civ. P. 15

Pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure, after the time has passed to amend a pleading as a matter of course, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Rule 15(a) is a "liberal rule [that] gives effect to the federal policy in favor of resolving cases on their merits instead of disposing of them on technicalities." *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (en banc). However, "[m]otions to amend are committed to the discretion of the trial court." *Keller v. Prince George's Cty.*, 923 F.2d 30, 33 (4th Cir. 1991). Specifically, the "district court may deny a motion to amend when the amendment would be prejudicial to the

7

opposing party, the moving party has acted in bad faith, or the amendment would be futile." *Equal Rights Ctr. v. Niles Bolton Assoc.*, 602 F.3d 597, 602-03 (4th Cir. 2010).

### IV. Discussion

#### a. Plaintiffs' Proposed Amendments Are Futile

The proposed Third Amended Complaint, (Dkt. No. 73), purports to add a claim against TSV for violation of the Dealers Act. Section 56-15-40 of the Dealers Act forbids, *inter alia*, motor vehicle manufacturers from engaging in unfair or deceptive practices. The Dealers Act states that, "[a]s used in this chapter," the term "motor vehicle" is "any motor driven vehicle required to be registered pursuant to *Section 56-3-110*." S.C. Code Ann. § 56-15-10(a) (emphasis added). The Dealers Act defines "manufacturer" as "any person engaged in the business of manufacturing or assembling new and unused *motor vehicles*." § 56-15-10(b) (emphasis added). Importantly, however, golf carts are registered in South Carolina pursuant to S.C. Code Ann. § 56-2-105: "An individual or business owner of a vehicle commonly known as a golf cart may obtain a permit decal and *registration* from the Department of Motor Vehicles upon presenting proof of ownership and liability insurance for the golf cart and upon payment of a five dollar fee." § 56-2-105 (emphasis added). Therefore, by its own unambiguous text, the Dealers Act does not apply to manufactures of golf carts nor golf carts themselves. Accordingly, Plaintiffs' motion to amend is denied as futile.

#### b. Plaintiffs State a Claim for Breach of Contract

To state a claim for breach of contract, Plaintiffs must sufficiently allege "the existence of a contract, its breach, and damages caused by such breach." *Hotel and Motel Holdings, LLC v. BJC Enters., LLC*, 414 S.C. 635, 652 (Ct. App. 2015). For a contract to be valid and enforceable, "the parties must have a meeting of the minds as to all essential and material terms of the

agreement." *Davis v. Greenwood Sch. Dist. 50*, 365 S.C. 629, 634 (2005).  "A meeting of minds is based upon the intent and purposes as shown by all the circumstances" and a "contract may be based on a verbal understanding to which both parties have mutually assented and upon which both are acting." *Rickborn v. Liberty Life Ins. Co.*, 321 S.C. 291, 303 (1996) (internal citations omitted).

In its motion to dismiss, TSV argues that the SAC, like the FAC, fails to allege plausibly the existence of a contract between TSV and Plaintiffs. (Dkt. No. 64 at 11-15).  At bottom, TSV argues that the parties never advanced beyond preliminary negotiations and that a "meeting of the minds" never occurred.

Plaintiffs, for their part, contend there was a "meeting of the minds" because "a contract was formed between the parties, irrelevant of, and without the need for the Dealer[] Agreement that the Defendant unilaterally voided." (Dkt. No. 70 at 6, 8) (arguing the Dealer Agreement's sheer existence "supports Plaintiffs theory that the material terms of the Contract had been established and agreed upon by the parties because of their previous exchange of in person meetings, documents, applications, business plans, phone calls, emails, real estate transactions and financing obligations").  Plaintiffs contend the following material terms were decided between the parties before TSV issued, and then voided, the Dealer Agreement:

1.  Plaintiffs would purchase the real estate located at 500 N. Hwy 52, Moncks Corner, SC 29461 from Gaskins Sportsman where Plaintiffs would operate the dealership;

2.  Plaintiff would assume the TSV inventory of Sportsman and finance it through Wells Fargo as requested by TSV;

3. Plaintiff would sell TSV inventory at a "quantified monthly rate to qualify them as a Diamond Dealer with TSV . . . established pursuant to the business plan Plaintiff submitted to TSV";

4. Plaintiffs would continue to finance their floorplan inventory with Wells Fargo at the request of TSV; and

5. Plaintiffs would market their product under the name TruCarts, a spin-off of their automobile company TruAuto.

(*Id.* at 10). Plaintiffs argue that a contract existed between Plaintiffs and TSV because "Plaintiffs did comply with and TSV did accept Plaintiffs closing on the real estate and real property on February 6, 2019 with the assistance of Wells Fargo." (*Id.*).

Reading all allegations in a light most favorable to Plaintiffs, as this Court must on a Rule 12(b)(6) motion by Defendant TSV, the Court finds that Plaintiffs have pled a plausible claim for breach of contract. The Court recognizes that Defendant TSV vigorously contests many of Plaintiffs' allegations and argue that some documents attached to previous versions of the complaint might be read as inconsistent with certain allegations in the SAC. The Court finds these issues are better sorted out at the summary judgment stage after completion of discovery and full briefing with the benefit of a record. Accordingly, the Court denies TSV's motion as to Plaintiffs' claim for breach of contract.

### c. The SAC Alleges Plausibly Claims for Fraudulent Misrepresentation, Constructive Fraud, Negligent Misrepresentation, and Promissory Estoppel

TSV argues that Plaintiffs fail to state claims for fraudulent misrepresentation, constructive fraud, negligent misrepresentation and promissory estoppel. TSV notes that "reasonable reliance"

is an essential element of each of these causes of action.[4]  TSV argues that, as shown by the SAC and its exhibits, Plaintiffs entertained doubts—prior to closing on Sportsman—as to whether they would become authorized E-Z-GO dealers, therefore precluding a finding that Plaintiffs' "reasonably" relied on TSV's "misrepresentations." *See* (Dkt. No. 64 at 15-20)[5]; *e.g.*, Exhibit 24,

---

[4] To establish a claim for fraudulent misrepresentation, Plaintiffs must allege and establish the following elements: "(1) a representation; (2) the falsity of the representation; (3) the materiality of the representation; (4) knowledge of its falsity, or reckless disregard for its truth or falsity; (5) intent that the representation be acted upon; (6) the hearer's ignorance of the falsity; (7) the hearer's reliance on its truth; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximate injury." *First Union Mortg. Corp. v. Thomas*, 317 S.C. 63, 71 (Ct. App. 1994).  The elements needed to establish constructive fraud are identical, except that Plaintiffs do not need to establish the Defendant's intent to deceive. *Pitts v. Jackson Nat. Life. Ins. Co.*, 352 S.C. 319, 333-34 (Ct. App. 2002).  To assert a claim for negligent misrepresentation, Plaintiffs are required to allege "(1) the defendant made a false representation to the plaintiff; (2) the defendant had a pecuniary interest in making the statement; (3) the defendant owed a duty of care to see that he communicated truthful information to the plaintiff; (4) the defendant breached that duty by failing to exercise due care; (5) the plaintiff justifiably relied on the representation; and (6) the plaintiff suffered a pecuniary loss as the proximate result of his reliance on the representation." *Quail Hill, LLC v. County of Richland*, 387 S.C. 223, 240 (2010).  Finally, the "elements of promissory estoppel are (1) an unambiguous promise by the promisor; (2) reasonable reliance on the promise by the promisee; (3) reliance by the promisee was expected by and foreseeable to the promisor; and (4) injury caused to the promisee by his reasonable reliance." *North Am. Rescue Prod., Inc. v. Richardson*, 411 S.C. 371, 379–80 (2015).

[5] TSV calls the Court's attention to the fact that Plaintiffs have removed or modified exhibits the Court explicitly relied on in its previous order, (Dkt. No. 40), to find that Plaintiffs had not pled reasonable reliance, (Dkt. No. 64 at 15-16) (noting Plaintiffs removed the FAC's Exhibit 31). *See also* (Dkt. No. 79-1 at 8) (chart provided by Plaintiffs to the Court indicating that the FAC's Exhibit 31 was removed from the SAC because "it was unnecessary").  TSV argues the Court should consider the FAC's Exhibit 31 in ruling on its current motion. *See Jeffrey M. Brown Assocs., Inc. v. Rockville Ctr. Inc.*, 7 Fed. Appx. 197, 202-03 (4th Cir. 2001) (noting a court may consider "consider certain *exhibits* attached to the original complaint that are integral to and explicitly relied on in the [amended] complaint, and whose authenticity is not challenged") (internal quotation marks omitted).  Here, the omitted exhibit is a portion of a conversation between Smith and Creech.  Because conversations between Smith and Creech are arguably not "integral" to Plaintiffs' complaint—in the way that a contract would be to a breach of contract dispute—the Court will not consider the FAC's Exhibit 31. *See Id.* at 4 (affirming district court's reliance on exhibits attached to plaintiff's original complaint—but removed from the amended complaint—where said exhibits were contracts defining the scope of the parties' respective obligations and which formed the basis of plaintiff's lawsuit).

11

(Dkt. No. 49-1 at 39) (February 5, 2019 text message from Smith to Creech stating "I'm really in the dark and confused. I never heard back from anybody. . . . This deal is starting to be very sketchy. . . . I just want somebody to give me some real answers").  In their response in opposition to TSV's motion to dismiss, Plaintiffs do not directly address TSV's argument but instead state that they had a "right" to rely on Defendants' "misrepresentations" in closing on Sportsman. *See* (Dkt. No. 70 at 14-16).

After careful consideration of the SAC and viewing the entirety of the events alleged in the SAC in a light most favorable to Plaintiffs, the Court finds that Plaintiffs have alleged plausibly "reasonable reliance" on TSV's alleged "misrepresentations." To be sure, certain exhibits attached to the SAC tend to show Plaintiffs held doubts about whether they would remain or become authorized E-Z-GO dealers. But "reliance as an element of fraud does not exclude the possibility of doubt." *See Sanders v. UDR, Inc.*, No. 3:10-CV-459, 2011 WL 127148, at *6 (E.D. Va. Jan. 12, 2011).   As the Court explained *supra* regarding the denial of the motion to dismiss on the breach of contract claim, Defendant TSV has raised substantial issues regarding these claims and have alleged Plaintiffs have manipulated the record by removing certain documents previously attached to earlier versions of the complaint.  The Court finds, however, that the better course to sort out these issues is to deny the motion to dismiss and to allow the parties to develop a full record upon which to address these issues through a motion for summary judgment.  TSV's motion is thus denied as to Plaintiffs' claims for fraudulent misrepresentation, constructive fraud, negligent misrepresentation, and promissory estoppel.

### V.     Plaintiffs' Negligence Claim Fails Because TSV Did Not Owe Plaintiffs a Duty of Care

"In a negligence action, a plaintiff must show that (1) the defendant owes a duty of care to the plaintiff, (2) the defendant breached the duty by a negligent act or omission, (3) the defendant's breach was the actual and proximate cause of the plaintiff's injury, and (4) the plaintiff suffered an injury or damages." *Easterling v. Burger King Corp.*, 416 S.C. 437, 446 (Ct. App. 2016) (quoting *Madison ex rel. Bryant v. Babcock Ctr., Inc.*, 317 S.C. 123, 135 (2006)). "[F]or liability to attach based on a theory of negligence, the parties must have a relationship recognized by law as providing the foundation for a duty to prevent an injury." *Id*. at 446 (quoting *McCullough v. Goodrich & Pennington Mortg. Fund, Inc.*, 373 S.C. 43, 47 (2007)).

Plaintiffs allege that TSV breached its duty toward Plaintiffs by: (a) withholding information about TSV's business dealings, specifically TSV's "licensing agreement" with White River; (b) withholding information that TSV might offer territorial rights to another party in Plaintiffs' promised territory; and (c) refusing to speak with Plaintiff when Plaintiff requested information. (Dkt. No. 49 ¶ 88). Plaintiffs allege TSV owed Plaintiffs a duty of care because TSV "appointed representatives to work for and on behalf of Plaintiffs to get them information and make all representations to Plaintiffs." (*Id.* ¶ 87).

TSV argues the contention that TSV appointed representatives to "work for and on behalf of Plaintiffs" is "illogical." (Dkt. No. 64 at 21). TSV continues that "TSV representatives work for and on behalf of TSV, not Plaintiffs" and "[n]owhere in the SAC do Plaintiffs set forth any facts explaining who these 'specifically appointed representatives' were, or how Plaintiffs reached the conclusion those representatives were appointed on Plaintiffs' behalf." (*Id.*). And, TSV adds, "South Carolina does not recognize a duty on the part of franchisors towards franchisees, which

13

Plaintiffs have already conceded, as noted in the Motion to Dismiss Order." (*Id.*) (citing (Dkt. No. 40)).

Plaintiffs counter that TSV had a duty to Plaintiffs because of an existing contractual relationship. (Dkt. No. 70 at 20) (citing *Nash v. Minnesota Title Ins. & Trust Co*, 163 Mass 574, 579, 40 N.E. 1039 (Mass. 1895) ("If one makes a statement for a consideration as a part of a contract, it is his duty to be accurate and ignorance will not relieve the consequences of his error. When seeking a remedy from him, a plaintiff sues in contract. It would be different of course, if one was merely answering the inquires of a stranger.")). Plaintiffs also cite to *In re MI Windows and Doors, Inc. Prods. Liability Litig.*, MDL No. 2333, 2013 WL 1442332 (D.S.C. April 9, 2013) for the proposition that "[a] duty to disclose arises where a contracting party who has superior knowledge, or knowledge that is not within the reasonable reach of the other party, has a legal duty to disclose information material to the bargain." *Id.* at * 4 (applying Kansas law).

The Court finds that Plaintiffs' negligence claim must be dismissed. First, the Court finds inapposite Plaintiffs' cited authorities. Neither authority applies South Carolina law nor is either authority directly on point. Second, Plaintiffs have not identified any legally recognized relationship from which a duty would spring as between Plaintiffs and TSV under South Carolina law. *Easterling*, 416 S.C. at 446. Nor have Plaintiffs directed the Court to any case law supporting the proposition that a special relationship existed between the parties. *See Bahringer v. ADT Sec. Servs., Inc.*, 942 F. Supp. 2d 585, 589-90 (D.S.C. 2013) (noting that "a negligence action will not lie when the parties are in privity of contract" except where "there is a special relationship between the alleged tortfeasor and the injured party"); *Id.* (identifying various special relationships recognized under South Carolina law including those between "design professionals and general contractors who work under their supervision," "lawyers and their clients," and "corporate

14

consultants and a state agency that is the subject of a report prepared by those consultants"). Third and finally, the Court agrees with TSV that the SAC's allegations do not support the contention that TSV "appointed representatives" to work for or on behalf of Plaintiffs and from which a duty of care from TSV to Plaintiffs would arise.

For these reasons, Plaintiffs' cause of action for negligence is dismissed.

### VI.     South Carolina Unfair Trade Practices Act

To state a South Carolina Unfair Trades Practices Act claim, a plaintiff must sufficiently allege "(1) that the defendant engaged in an unlawful trade practice, (2) that the plaintiff suffered actual, ascertainable damages as a result of the defendant's use of the unlawful trade practice, and (3) that the unlawful trade practice engaged in by the defendant had an adverse impact on the public interest." *Ameristone Tile, LLC v. Ceramic Consulting Corp., Inc.*, 966 F. Supp. 2d 604, 621 (D.S.C. 2013). Under South Carolina law, "unfair or deceptive acts have an adverse impact upon the [public] if those acts have the potential for repetition." *Id*. "Potential for repetition can be demonstrated by either 'showing the same kind of actions occurred in the past, thus making it likely they will continue to occur absent deterrence' or 'showing the company's procedures created a potential for repetition of the unfair and deceptive acts.'" *Id.* (citing *Bessinger v. Food Lion, Inc.*, 305 F. Supp. 2d 574, 581 (D.S.C. 2003)). Conduct, however, "'that affects only the parties to the transaction and not the public interest provides no basis for a SCUTPA claim.'" *Id.*

Here, even viewing the facts in a light most favorable to them, Plaintiffs plead no facts showing TSV acted similarly in the past nor do Plaintiffs plead nonconclusory facts showing TSV's acts were the results of "specific procedures or business practices that create the potential for repetition." *Machinery Sols., Inc. v. Doosan Corp.*, No. 3:15-cv-03447, 2016 WL 2756429, at *3 (D.S.C. May 12, 2016) (noting that "[a]bsent specific facts, a plaintiff is merely offering a

speculative claim about adverse public impact); *Companion Prop. & Cas. Ins. Co. v. U.S. Bank Nat'l Ass'n,* No. 3:15-cv-01300-JMC, 2015 WL 7568613, at *9 (D.S.C. Nov. 24, 2015) ("The fact that an alleged misconduct occurred is not sufficient to establish that the misconduct amounts to a procedure or business practice.").

Plaintiffs' cause of action for violation of SCUTPA is therefore dismissed.

### VII.     Conclusion

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant Textron Specialized Vehicles, Inc.'s Motion to Dismiss (Dkt. No. 64). The Court **GRANTS** TSV's motion to the extent that Plaintiffs' claims for negligence and violation of SCUTPA are **DISMISSED**. The Court otherwise **DENIES** TSV's motion. The Court further **DENIES** Plaintiffs' Motion for Leave to Amend (Dkt. No. 73).

**AND IT IS SO ORDERED.**

s/ Richard Mark Gergel
United States District Court Judge

December 29, 2020
Charleston, South Carolina