IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| TruAuto MC, LLC, and TDMC Property Holdings, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>Textron Specialized Vehicles, Inc., White River Marine Group, LLC, and Wells Fargo Commercial Distribution Finance, LLC,<br><br>Defendants. | Civil Action No. 2:19-cv-1381-RMG<br><br>**ORDER AND OPINION** |

Before the Court is Defendant Textron Specialized Vehicles, Inc. ("TSV")'s motion to exclude the expert report and testimony of Plaintiff's expert W. Ellison Thomas. (Dkt. No. 100). For the reasons set forth below, the Court grants in part and denies in part TSV's motion.

**I.     Background**

This case concerns Plaintiff TruAuto MC, LLC's ("Plaintiff")'s efforts to become an authorized TSV dealer of EZ-Go brand golf carts.[1]

Plaintiff retained W. Ellison Thomas, CPA, CVA, CFF, as an expert to opine on "Plaintiff['s] lost profit damages and out-of-pocket expenses." Thomas Report, (Dkt. No. 100-1 at 3).

---

[1] On August 13, 2021, by stipulation, Plaintiff TDMC Property Holdings, LLC dismissed its claims against TSV and Defendant Wells Fargo Commercial Distribution Finance, LLC. (Dkt. No. 99). By prior order, the Court dismissed Defendant White River Marine Group, LLC from this action. (Dkt. No. 81 at 5 n.3).

-1-

TSV now moves to exclude Thomas's report on the basis that its conclusions are based on unverified or otherwise speculative assumptions. (Dkt. Nos. 100 and 113). Plaintiff opposes. (Dkt. No. 110).

TSV's motion is fully briefed and ripe for disposition.

## II. Legal Standard

Under Fed. R. Evid. 702, the Court acts as a gatekeeper "to verify that expert testimony is based on sufficient facts or data." *E.E.O.C. v. Freeman*, 778 F.3d 463, 472 (4th Cir. 2015). The expert testimony must be shown to be "not only relevant, but reliable." *Daubert v. Merrell Dow Pharm. Inc.*, 509 U.S. 579, 589 (1993). "Because expert witnesses have the potential to be both powerful and quite misleading, it is crucial that the district court conduct a careful analysis into the reliability of the expert's proposed opinions." *United States v. Fultz*, 591 Fed. Appx. 226, 227 (4th Cir. 2015).

The trial court must ensure that (1) "the testimony is the product of reliable principles and methods," (2) the expert has reliably applied the principles and methods to the facts of the case," and (3) the "testimony is based on sufficient facts and data." Fed. R. Evid. 702(b), (c), (d). "This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid," *Daubert*, 509 U.S. at 592-93, and whether the expert has "faithfully appl[ied] the methodology to the facts." *Roche v. Lincoln Prop. Co.*, 175 Fed. Appx. 592, 602 (4th Cir. 2006). Additionally, the Court must evaluate any proposed expert testimony under the standards of Fed. R. Evid. 403 to determine whether the probative value of the evidence, if relevant, is substantially outweighed by the risk of misleading or confusing the jury.

Factors to be considered in assessing the reliability of technical or scientific evidence include "whether a theory or technique ... can be (and has been) tested," "whether the theory or technique has been subjected to peer review and publication," the "known or potential rate of

error," the "existence and maintenance of standards controlling the technique's operations," and whether the theory or technique has garnered "general acceptance." *Daubert*, 509 U.S. at 593–94. The *Daubert* factors are not exhaustive and illustrate the type of factors "that will bear on the inquiry." *United States v. Hassan*, 742 F.3d 104, 130 (4th Cir. 2014). Courts have also considered whether the "expert developed his opinions expressly for the purposes of testifying or through research conducted independent of litigation." *Wehling v. Sandoz Pharm. Corp.*, 162 F.3d 1158 at *3 (4th Cir. 1998); *Daubert v. Merrell Dow Pharm. Inc.,* 113 F.3d 1311, 1317 (9th Cir. 1995) (on remand). The proponent of the expert testimony carries the burden to establish the admissibility of the testimony by a preponderance of the evidence. *Cooper v. Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001).

### III.    Analysis

First, TSV argues that Thomas's opinions regarding costs and out-of-pocket expenses should be excluded because they are unreliable and based on unverified or speculative assumptions. Alternatively, TSV argues that said opinions should be excluded as they are "nothing more than a simple mathematical calculation" requiring "no expertise to perform."

In his report, Thomas asserts that Plaintiff spent $169,116.00 in pursuit of a Dealer Agreement with TSV. (Dkt. No. 100-1 at 21) (Exhibit D to Thomas Report). Exhibit D is a chart that lists various employees of Plaintiff, their "2019 W-2 Wages," their "Hours for the Year," an "Hourly [rate]" of pay, and the hours each employee worked "On EZ-GO." To arrive at his total out-of-pocket expenses figure, Thomas multiplied each employee's "hourly [rate]" by the number of hours the employee allegedly spent "on EZ-GO." To calculate each employee's hourly rate, Thomas divided the employee's W-2 wages by the estimated number of hours the employee worked for the year. (Dkt. No. 100-2 at 54:14-25). Thomas testified that he did not attempt to "to discuss with employees and actually verify" the number of hours each employee listed in the chart

worked on Plaintiff's attempted deal with TSV. (*Id.* at 53:16-54:4, 55:19-21). Thomas appeared to testify that Tonya Ambrose, Plaintiff's CFO, provided him the above data. (*Id.* at 19:18-24). Ambrose testified that, in compiling the data for Exhibit D, Plaintiff's employees verbally told Ambrose how many hours each worked toward Plaintiff obtaining an EZ-Go franchise with TSV. (Dkt. No. 100-5 at 101:3-102:7). Ambrose testified, however, that employees did not differentiate between time spent aiding Plaintiff becoming a TSV dealer versus assisting Plaintiff prosecute this lawsuit. (*Id.* at 102:12-17) (testifying that "they just told me the total hours they had been involved with E-Z-Go — E-Z-Go in general. We asked them how many hours they had put into the lawsuit, the franchise, anything that they had to do with E-Z-Go, and that's the hours they gave us"). Last, Thomas testified that his calculations regarding out-of-pocket costs did not require any expertise:

> Q: Okay. And I just want to make sure I understand. Really, what you did here with out-of-pocket expenses was just a simple function of math, wasn't it? They told you the hours they worked, and you multiplied that by an hourly rate and came up with an out-of-pocket expense, correct?
> A: Right.
> Q: And you didn't need your CPA to do that right?
> A: Did I have to be a CPA to do that?
> Q: Right.
> A: No, I—I would say that there's a lot of people that aren't CPAs that could do that[.]

(*Id.* at 55:22-56:8).

The Court excludes Thomas's opinions on costs and out-of-pocket expenses. As Thomas himself admitted, the above testimony was based on simple mathematical calculations which did not require specialized knowledge. Said differently, as the evidence to determine costs and out-of-pocket expenses can easily be understood by a lay jury, the Court finds Thomas's opinions unhelpful in that they will not assist the trier of fact to understand the evidence. *See, e.g., Minnesota Lawyers Mut. Ins. Co. v. Batzli,* No. 3:09cv432, 2010 WL 670109, at *2 (E.D. Va. Feb.10, 2010) (noting "[t]he Fourth Circuit has also held that where lay jurors are fully able to

understand and appreciate the implications of the evidence admitted, proffered expert testimony will not assist the jury in determining a factual issue; and is therefore inappropriate") (citing *United States v. Portsmouth Paving Corp.,* 694 F.2d 312, 324 (4th Cir.1982)); *Schwartz v. Fortune Magazine*, 193 F.R.D. 144, 147 (S.D.N.Y. 2000) (court had properly excluded opinions offered by plaintiff's damages expert as "unhelpful" where opinions were the result of "basic calculations" and did not require the application of specialized knowledge); *Scurmont LLC v. Firehouse Restaurant Group, Inc.*, No. 4:09-cv-00618-RBH, 2011 WL 2670575, at *12 (D.S.C. July 8, 2011) (excluding opinion regarding claimed connection between trademarks where expert "engaged in no independent research," the claimed connection was obvious enough that lay jurors could recognize it, and proffered testimony was not based on specialized knowledge).

Additionally, the Court finds Thomas's above testimony unreliable as it is based in part on assumptions contrary to certain record facts. Specifically, in Exhibit D, Thomas lists employee Jason Woodcox as working 600 "hours on EZ-GO." Woodcox testified, however, that he did not work 600 hours on EZ-GO. (Dkt. No. 100-6 at 3) ("Q: Do you believe you spent 600 hours on the E-Z-Go Franchise and Lawsuit? A: 600 hours, no sir. Q: Did you tell anybody that you had worked 600 hours on the E-Z-Go franchise and the lawsuit? A: No, sir."). *See Tyger Constr. Co. v. Pensacola Constr. Co.*, 29 F.3d 137, 142 (4th Cir. 1994) (vacating verdict based upon expert opinion regarding damages from contractor's failure to secure materials where expert's calculations relied "on a faulty assumption that [wa]s unsupported by the evidence"). Thomas nevertheless calculated Plaintiff's out of pocket costs using this figure. Further, Thomas's calculation includes time which is not even compensable as damages. *See* Fed. R. Civ. P. 54(d)(1); *Phillips and Jordan, Inc. v. McCarthy Improvement Co.*, No. 5:18-cv-559-JMC, 2021 WL 364644, at *3-4 (D.S.C. 2021) (employee wages for assisting in litigation are not recoverable as "costs"

under Rule 54); Thomas Deposition, (Dkt. No. 100-2 at 102:8-10) ("Q: Do you know how much time was spent on the E-Z-Go dealer agreement and how much time was spent on the lawsuit? A: No, sir.").

Thus, as it is both unhelpful and unreliable, the Court excludes Thomas's testimony and expert report to the extent it concerns Plaintiff's costs and out-of-pocket expenses.

Second, TSV argues that Thomas's opinions regarding Plaintiff's lost profits should be excluded as they are based on "conclusory statements" by Plaintiff and its counsel that Thomas did not independently verify.  TSV argues:

> Thomas contends Plaintiffs suffered $415,395 in lost profits from February 2019 to April 30, 2021 – the date of his expert report. He contends that Plaintiffs will suffer an additional $1,430,805 in lost profits from May 1, 2021, through January 2029. All of the assumptions that are the basis of Thomas's opinion of lost profits are based on the "conclusory statements" of the Plaintiffs or their counsel. Namely, Thomas assumes: (1) that a 10-year time frame is reasonable simply because Plaintiffs' counsel told him it was; (2) the expected new units sold and gross profits on each new vehicle sale are reasonable based solely on a conversation with the Plaintiff; and (3) the expected trade-in sales and gross profits recognized on each trade-in vehicle sale, again, are reasonable based solely on a conversation with the Plaintiff.

(Dkt. No. 100 at 6).

As noted above, TSV first argues Thomas's report should be excluded because Thomas used a 10-year time frame for lost profits simply because Plaintiff "told him so."

In his report, Thomas projects ten years of lost profits for Plaintiff.  Thomas testified that Plaintiff's counsel provided him this time frame. (Dkt. No. 100-2 at 74:13-18).  Thomas also testified that, given his own experience and "history of sales and service agreements," he believed a ten-year projection was reasonable. (*Id.* at 74:19-75:3, 76:4-12).  Thomas testified that although the proposed EZ-Go agreement between TSV and Plaintiff had only a two-year initial term, that fact did not impact Thomas's opinion regarding the lost profits period. (*Id.* 79:21-80:11). Thomas

also testified that he was aware that TSV offered Plaintiff an opportunity to become an EZ-Go dealer in May 2019 and that if Plaintiff had accepted the opportunity, "they would not [have had any lost profits]." (*Id.* 112:6-16).

The Court declines to exclude Thomas's testimony on the basis that Thomas calculated 10-years of lost profits simply because Plaintiff "told him so." Contrary to TSV's assertion, Thomas's 10-year projection was not based solely on Plaintiff or its counsel suggestion but also on Thomas's experience with service agreements. (*Id.* at 76:4-12) ("When you look at people who make investments to be dealers—to become dealers, there's certain things. They do that, and it forms an alliance, if you will . . . . But these people become each other's—you know, they become dependent on each other. And as a general rule, I would say that a good dealer does not lose his sales and service agreement in automobiles, golf carts, boats, appliances furniture, those type of things."); (*Id.* at 128:14-18) (testifying that Plaintiff had a viable or otherwise sufficient business plan and noting that Thomas had been "around businesses for 30-plus years, and I have listened to many, many pitches, for lack of a better word"). To the extent TSV argues that Thomas did not adequately consider the fact that the proposed agreement between Plaintiff and TSV was for a term of only two years or that Plaintiff was offered an opportunity to become a TSV dealer in May 2019, such arguments challenge the weight Thomas accorded certain facts and are properly confronted through vigorous cross-examination. *Kiessling v. Kiawah Island Inn Co. LLC*, No. 2:17-CV-02146-DCN, 2019 WL 331176, at *5 (D.S.C. Jan. 25, 2019) ("[I]n some cases, whether an expert should have considered certain facts when forming her opinion goes to the weight of the opinion, not its admissibility.") (citing *Sparks v. Gilley Trucking Co., Inc.*, 992 F.2d 50, 54 (4th Cir. 1993)); *Id.* (declining to exclude expert because "[t]he decision to not examine certain evidence goes to the weight of the opinion, not its admissibility"); *In re Bos. Sci. Corp. Pelvic*

*Repair Sys. Prod. Liab. Litig.*, No. MDL 2326, 2018 WL 8054374, at *3 (S.D.W. Va. May 30, 2018) (declining to exclude defendant's expert and noting that if "plaintiffs believe that Dr. Badylak did not give sufficient consideration to the alternative theory proposed by Dr. Iakovlev, they can address this purported deficiency on cross-examination").

TSV next takes issue with the fact that Thomas assumed, in his calculations, that Plaintiff would sell twenty EZ-Go units per month with a gross profit margin of $1,800 per golf cart. TSV argues that Thomas used the figure of twenty golf carts a month solely because this is what Plaintiff told Thomas to use and that Thomas did not consider nor analyze any "independent data" to support sales of twenty units per month. Further, TSV argues that while Thomas considers an $1,800 per cart gross profit "reasonable," Plaintiff's actual sales data does not support this inference.

The Court declines to exclude Thomas's lost profit testimony or opinions on the above basis. In deciding to assume that Plaintiff would sell twenty golf carts a month, Thomas testified that Todd Smith—one of Plaintiff's principals—told Thomas that Smith believed selling twenty units a month was attainable in light of Smith's "experience and based upon him being in the market place and the fact that they . . . were selling quite a number of golf carts that were not E-Z-Go." (Dkt. No. 100-2 at 84:3-7); (*Id.* at 85:3-15) (noting that the business plan submitted to TSV proposed Plaintiff selling ten units a month and that subsequent planning by Smith led Smith to be "comfortable" with believing selling twenty units a month was attainable); *see also* (Dkt. No. 110 at 6) (arguing that Plaintiff was approved as a "Diamond Dealer" and noting that Diamon Dealers must sell a minimum of 12.5 EZ-Go golf carts per month); John Creech Deposition, (Dkt. No. 110-4 at 101:1-9) (testifying that "I said, this will be a Diamond Dealer. And all I meant by that is they had the potential to sell a lot of volume."). As to Thomas's assumption that Plaintiff would acquire

a gross profit of $1,800 per golf cart, the Court finds that TSV's criticisms on this point go to Thomas's weighing of evidence more than his methodology. Further, contrary to what TSV contends, the Court cannot say that Thomas showed a complete disregard for Plaintiff's "business realities" in arriving at a gross profit of $1,800 per golf cart. *See* Thomas Report, (Dkt. No. 110-2 at 6) (noting that "[u]nit sales per month and average gross profits per month are based on my analysis of the company financial records and conversations with Mr. Todd Smith and Ms. Tonya Ambrose (Accounting)"); (Dkt. No. 100-2 at 86:11-87:3) (noting Thomas's $1,800 estimate was based on his review of Plaintiff's financials and Smith's expectations and further testifying "I looked at the average grosses, for you know, all the carts. I sorted it by—by different things, and after looking at what they were holding—and the way they were planning to do the E-Z-Go as far as marketing them, and, you know, improving them or adding—you know, adding things to them, it seemed like $1,800 a copy was a likely expectation or reasonable, yes, sir"); *MyGallons LLC v. U.S. Bancorp*, 521 Fed. App'x 297, 307 (4th Cir. 2013) (finding expert completely "ignored business realities and relied on sheer speculation" where expert projected market share for start-up plaintiff based on "large, successful companies" such as Apple, Costco, Netflix, and eHarmony while failing to consider if plaintiff even had the "resources, financing or experience necessary for such growth or, indeed, even as necessary to carryout its own business plan"); *see also McReynolds v. Sodexho Marriot Servs., Inc.*, 349 F. Supp. 2d 30, 38 (D.D.C. 2004) (denying defendant's motion to exclude plaintiff's expert on the ground that the expert had failed to independently verify data produced by the defendant itself).

      Last, TSV takes issues with Thomas's assumption that 20% of new EZ-Go sales would be accompanied by a trade that could be sold as a retail used unit and that the profit on trade-ins would be roughly $1,600. TSV argues that Thomas made this assumption simply because Plaintiff "told

him so" without any independent verification and despite Plaintiff's actual profit per used golf cart being less than $1,600 in 2019, 2020, and the first three months of 2021. *See* (Dkt. No. 100 at 11) (arguing that the gross profit per used golf cart sold by Plaintiff was "$1,297 in 2019; $1,242 in 2020; and $1,263 for the first three months of 2021").

The Court rejects TSV's final arguments for excluding Thomas's testimony. While Thomas testified that he did use the above figure in part based on conversations with Smith, Thomas found the estimates justified considering Smith and Thomas's own relevant experiences and Thomas's own review of Plaintiff's financials. (Dkt. No. 100-2 at 87:17-88:19) (explaining that "if you're [representing] something like E-Z-Go and there's customer loyalty, there's people who want to get a new golf cart and—and how many of those would bring an opportunity to trade . . . and Mr. Smith's estimate would be 20 percent. It seemed reasonable to me. . . . [T]he nature of people who are buying things and trade. So, you know, I — I have a golf cart and if I go buy another . . . I'm going to trade. I'm going to . . . I'm not going to deal with the—with Craig[s]list or trying to sell it in my yard or what have you"); Thomas Affidavit, (Dkt. No. 110-6 at 4-6) (explaining in greater detail Thomas's calculations and assumptions for arriving at his average gross profit per unit figure).

### IV.     Conclusion

For the foregoing reasons, and as detailed herein, TSV's motion to exclude the expert report and testimony of W. Ellison Thomas (Dkt. No. 100) is **GRANTED IN PART AND DENIED IN PART.**

**AND IT IS SO ORDERED.**

s/ Richard Mark Gergel
Richard Mark Gergel
United States District Judge

September 14, 2021
Charleston, South Carolina