# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| Truauto MC, LLC and<br>TDMC Property Holdings, LLC,<br><br>    Plaintiffs,<br><br>v.<br><br>Textron Specialized Vehicles, Inc., White River Marine Group, LLC, and Wells Fargo Commercial Distribution Finance, LLC,<br><br>    Defendants. | Civil Action No. 2:19-cv-1381-RMG<br><br>**ORDER AND OPINION** |

Before the Court is Defendant Wells Fargo Commercial Distribution Finance ("Wells Fargo")'s motion for summary judgment. (Dkt. No. 103). Also before the Court is Wells Fargo's motion to exclude the expert report and testimony of W. Ellison Thomas. (Dkt. No. 104). For the reasons set forth below, the Court grants Wells Fargo's motion for summary judgment and denies as moot the motion to exclude.

## I.     Background

This action concerns Plaintiff TruAuto MC, LLC ("Plaintiff" or "TruAuto")'s efforts to become an authorized dealer of Defendant Textron Specialized Vehicles, Inc. ("TSV")'s E-Z-Go branded golf carts.[1] Doug McElveen and Todd Smith own TruAuto. (Dkt. No. 49 ¶ 11).

Around October 2018, McElveen and Smith had a discussion with Cohen Gaskins, the owner of Sportsman Truck & Auto Sales, LLC ("Sportsman"), an E-Z-Go Authorized Dealership

---

[1] On August 13, 2021, by stipulation, Plaintiff TDMC Property Holdings, LLC dismissed its claims against TSV and Wells Fargo. (Dkt. No. 99). By prior order, the Court dismissed Defendant White River Marine Group, LLC from this action. (Dkt. No. 81 at 5 n.3).

1

and Franchise. (*Id.* ¶ 11).  McElveen and Smith expressed their interest in purchasing Sportsman's building and becoming an E-Z-Go authorized dealer and franchise owner. (*Id.* ¶ 11).

Around November 21, 2018, Smith texted John Creech, an E-Z-Go representative, to introduce himself and sent Creech a business plan Smith had created. (*Id.* ¶ 16).  Around November 28, 2018, Creech travelled to South Carolina to meet and have dinner with Smith and to discuss the potential business plan. (*Id.* ¶ 18).  Creech advised Smith that all E-Z-Go dealers finance their franchise floorplans with Wells Fargo. (*Id.* ¶ 19).

After informing Creech that he had reached an agreement on the terms for the purchase of Sportsman, Smith asked Creech for an update on obtaining financing from Wells Fargo. Ex. 4, (Dkt. No. 49-1 at 5). Creech advised that "the credit application gets the ball rolling with [Wells Fargo]." (*Id.*). On December 21, 2018, Sean Leahy, a Field Sales Representative with Wells Fargo, reached out to Smith to discuss TruAuto's application for floor plan financing. (Dkt. No. 103-2 at 2). Throughout January 2019, Leahy communicated with Tonya Ambrose ("Ambrose"), a TruAuto employee, regarding TruAuto's application. *See* (Dkt. No. 103-3 at 2-7). On January 8, 2019, TruAuto submitted its Dealer Application to Wells Fargo. *See* (Dkt. No. 103-4 at 2-6).

After TruAuto submitted its Dealer Application, Kevel Purcell, a Credit Analyst with Wells Fargo, emailed Ambrose with questions regarding the transaction and TruAuto's application. (Dkt. No. 103-5). Purcell was the underwriter assigned to the transaction and was involved in obtaining the necessary documents and information needed from TruAuto. Kevel Purcell Deposition, (Dkt. No. 103-6 at 13:5–14:25). On January 29, 2019, Purcell notified Ambrose that TruAuto was conditionally approved for the line of credit. (Dkt. No. 103-7 at 2). Purcell's email to Ambrose stated: "We are approving the loan today with conditions (legal paperwork) that has to be returned to us prior to us activating. [TSV]/Arctic Cat will be notified that a $950,000 credit line has been

approved. You should get the official approval letter either late tonight or tomorrow." (*Id.*). Following Purcell's email, in a Conditional Approval letter dated January 31, 2019, Wells Fargo informed TruAuto that Wells Fargo had "conditionally approved [TruAuto for] a credit facility for [TSV] product lines." (Dkt. No. 103-8 at 2-3). The Conditional Approval Letter stated that "the activation of the above credit facility is contingent upon completion of all of the conditions" listed in the letter and required TruAuto to submit additional documents and information. (*Id.*). The Conditional Approval Letter also stated, in bold font, that "any advances under the above-referenced credit facility are contingent upon...(b) our receipt of notification from [TSV] that you have been approved as a dealer of their products." (*Id.*) (emphasis removed).

The same day Wells Fargo conditionally approved TruAuto, Smith contacted Creech after a discussion with a friend who owned Berkeley Outdoors, another golf cart dealership in the area. Ex. 21, (Dkt. No. 49-1 at 31-33). Smith expressed concern after learning that Berkeley Outdoors had been offered exclusive rights to sell certain golf carts, effectively preventing TruAuto from becoming a TSV authorized dealer. (*Id.*). Creech responded, stating he was "trying to get more details" and that he would report back once he got "answers from the top." (*Id.*).

On February 4, 2019, two days before TruAuto was set to close on Sportsman, Smith texted Creech again saying, "No info? I'm slated to close Wednesday. Probably just gonna close and take the carts and see where it goes!" (Dkt. No. 103-9 at 2). The next day, Ambrose emailed Purcell asking "Do you have anything from Textron stating that we have been approved as a dealer?" Ex. 23, (Dkt. No. 49-1 at 37). Minutes later, Purcell responded, "No." (*Id.*). Later that day, Smith texted Creech saying he was "in the dark and confused," concerned that TSV had not responded to his questions, and that the "deal [was] starting to be very sketchy." Ex. 24, (*Id.* at 39). When

3

deposed, Smith conceded that on February 5, 2019, he was not sure if TruAuto would be approved as a dealer. (Dkt. No. 103-1 at 157:4–10).

On February 6, 2019, Wells Fargo sent a revised loan package to TruAuto, which included a Revised Conditional Approval Letter. (Dkt. No. 103-10 at 2-3). Like the prior Conditional Approval Letter, the Revised Conditional Approval Letter indicated that TruAuto was "conditionally approved" for a line of credit to be used for floor plan financing of TSV products, included a list of documents and information which need to be submitted prior to final approval, stated that final approval was contingent upon Wells Fargo being notified by TSV that TruAuto had been approved as an authorized E-Z-Go dealer, and stated that if TruAuto did "not meet the above-conditions within thirty (30) days of the date of this letter, or if a material adverse change in [TruAuto's] business occurs at any time," Wells Fargo could deny TruAuto's request for financing. (*Id.*). In addition to the Revised Conditional Approval Letter, the documents sent to TruAuto on February 6, 2019 included, among other things, an Inventory Financing Agreement ("IFA") and a Transfer and Assumption Agreement. (Dkt. Nos. 103-11 and -12). Neither document had been executed by Wells Fargo when they were sent to TruAuto. (*Id.*).

On February 6, 2019, TruAuto closed on the purchase of Sportsman. Ex. 26, (Dkt. No. 49-1 at 61 *et seq.*). As part of the purchase, Plaintiff assumed nearly $500,000.00 in inventory and purchased real estate and a building for approximately $2,350,000.00. (*Id.*). Following the closing, Smith sought clarification from TSV regarding TruAuto's approval as an authorized dealer but alleges he did not receive a response. (Dkt. No. 103-13 at 3-4). On February 19, 2019, TSV voided the Dealer Agreement which it had sent the day before to TruAuto. Ex. 29, (Dkt. No. 49-1 at 90). During his deposition, Smith admitted that no one from TruAuto contacted Wells Fargo upon receiving notification that the Dealer Agreement had been voided. (Dkt. No. 103-1 at 283:3–10).

Wells Fargo first learned that TruAuto would not be approved as an authorized dealer on February 21, 2019. That morning, Ryne Drummonds from TSV emailed Leahy stating "Hey Sean, Can you hold on TruAuto buyout? We need to finalize a few things internally with this." (Dkt. No. 103-16 at 2). One minute later, Robert White, a TSV employee, responded to Drummonds' email stating "[TSV] will not be moving forward with this dealer at this time." (*Id.*). During his deposition, White testified that no one from TSV informed Wells Fargo of TSV's decision not to approve TruAuto prior to his email on the morning of February 21, 2019. (Dkt. No. 103-17 at 120:7–22). Addressing the fact that Wells Fargo was not notified, on February 28, White wrote Leahy stating: "The customer was notified they would not be approved as an authorized TSV dealer. My apologies you and Wells [Fargo] were not notified." (Dkt. No. 103-18 at 2). During his deposition, White confirmed that Wells Fargo played no role in TSV's decision not to approve TruAuto as an authorized dealer. (Dkt. No. 103-17 at 118:16–119:7). Smith admitted that TruAuto had no evidence showing that Wells Fargo was informed prior to February 21, 2019 and no evidence that Wells Fargo played a role in TSV's decision. (Dkt. No. 103-1 at 279:21–25; 284:7–11).

In May 2021, after this litigation had been pending roughly two years, Wells Fargo states it discovered an IFA containing the electronic signature of Michele Cohan. The IFA had been uploaded onto Wells Fargo's Seibel system, a document repository. Cohan is an Operations Analyst with Wells Fargo and works within Wells Fargo's Deal Closing department. Deposition of Michele Cohan, (Dkt. No. 103-24 at 9:21–25). Cohan, along with others, monitors a shared email inbox where potential dealers submit documents as part of the application and approval process. (*Id.* at 10:2–9; 15:10–13). As documents are received, the Operations Analysts upload them into Wells Fargo's Siebel system and notate when certain conditions for approval are

5

satisfied. (*Id.* at 13:10–21). Cohan testified that it is Wells Fargo's policy to have Operations Analyst countersign documents as they are received, regardless of whether all the conditions for final approval of the financing have been satisfied. (*Id.* at 20:20–22). If all the conditions for approval are met and closed out within the Siebel system, an Operations Analyst then updates Wells Fargo's AIMS systems and activates the line of credit. (*Id.* at 23:8–23). Cohan admitted that the IFA contains her electronic signature but testified that she notified Leahy on February 19, 2019 that other required documents had not been submitted by TruAuto. (*Id.* at 10:18–11:2); *see also* (Dkt. No. 103-25 at 2). Cohan testified that TruAuto's line of credit was never finally approved and activated because "[t]here were still missing conditions." (Dkt. No. 103-24 at 23:15–16).

## II.     **Pertinent Procedural History**

Plaintiff filed this action on April 2, 2019 in the Berkeley County Court of Common Pleas against Textron, Inc., White River, and Wells Fargo. (Dkt. No. 1-1). Textron, Inc. and White River removed this action on May 10, 2019. (Dkt. No. 1). On September 25, 2019, Plaintiff filed its First Amended Complaint, substituting Textron, Inc. with TSV. (Dkt. No. 21).

On February 6, 2020, Wells Fargo filed a motion for judgment on the pleadings. (Dkt. No. 43). In response, Plaintiff filed a motion for leave to amend the complaint along with a proposed Second Amended Complaint. (Dkt. No. 48). Prior to the court issuing a ruling on Plaintiffs' motion for leave to amend, Plaintiffs appealed the grant of Textron's and White River's Motion to Dismiss to the Fourth Circuit. (Dkt. No. 53). On April 8, 2020, the Court granted Wells Fargo's motion for judgment on the pleadings. (Dkt. No. 56). Plaintiff did not appeal the order granting Wells Fargo's motion. On August 21, 2020, while Plaintiff's appeal was pending, the Court entered an Order and Notice of Indicative Ruling indicating that if the case was remanded from the Fourth Circuit,

Plaintiff's motion for leave to amend would be granted. (Dkt. No. 60). The Fourth Circuit subsequently dismissed Plaintiff's appeal.

Plaintiff's motion for leave to amend the complaint was granted on September 21, 2020, and the Second Amended Complaint was deemed filed as of that date. (Dkt. No. 62). As to Wells Fargo, Plaintiff's Second Amended Complaint asserted claims for breach of contract, fraud and misrepresentation, constructive fraud, negligence, negligent misrepresentation, promissory estoppel, and slander of title. (Dkt. No. 49). On October 5, 2020, Wells Fargo moved to dismiss all claims asserted against it in the Second Amended Complaint. (Dkt. No. 63). In an Order and Opinion entered on January 4, 2021, the Court dismissed all of Plaintiffs' claims against Wells Fargo except for Plaintiff's breach of contract claim. (Dkt. No. 82).

Wells Fargo now moves for summary judgment on Plaintiff's claim for breach of contract. (Dkt. Nos. 103 and 112). Plaintiff opposes. (Dkt. No. 108). Wells Fargo also moves to exclude the testimony of Plaintiff's damages expert W. Ellison Thomas. (Dkt. No. 104). Plaintiff did not file an opposition to Wells Fargo's motion to exclude.

By Order and Opinion dated September 23, 2021, the Court granted TSV summary judgment on Plaintiff's breach of contract claim. (Dkt. No. 116 at 10-12) (finding that "[c]ontrary to Plaintiff's assertion otherwise, the undisputed evidence—viewed in a light most favorable to Plaintiff, the nonmoving party—does not demonstrate the existence of facts sufficient for a reasonable jury to find that the parties manifested an intention to be bound by their communications or conduct as of December 20, 2018") (internal citations and quotation marks omitted).

Wells Fargo's motions are fully briefed and ripe for disposition.

**III.    Legal Standard**

7

To prevail on a motion for summary judgment, the movant must demonstrate that there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The party seeking summary judgment has the burden of identifying the portions of the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, [which] show that there is no genuine issue as to any material fact and that the moving part is entitled to a judgement as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 & n.4 (1986) (citing Rule 56(c)). The Court will interpret all inferences and ambiguities against the movant and in favor of the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Where the moving party has met its burden to put forth sufficient evidence to demonstrate there is no genuine dispute of material fact, the non-moving party must come forth with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing Rule 56(e)). An issue of material fact is genuine if the evidence is such that a reasonable jury could return a verdict in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

### IV.     Discussion

Wells Fargo argues, *inter alia*, that it is entitled to summary judgment on Plaintiff's remaining claim for breach of contract because Plaintiff cannot satisfy the South Carolina "Lender States of Frauds." S.C. Code Ann. § 37-10-107. This statute provides, in relevant part:

> No person may maintain an action for legal or equitable relief or a defense based upon an alleged failure to perform a promise, undertaking, accepted offer, commitment, or agreement: (a) to lend or borrow money . . . or (c) to renew, modify, amend, or cancel a loan of money or any provision with respect to a loan of money, involving in any such case a principal amount in excess of fifty thousand dollars, **unless the party seeking to maintain the action or defense has *received* a writing from the party to be charged** containing the material terms and conditions of the promise, undertaking, accepted offer, commitment, or agreement, and the party to be charged, or its duly authorized agent, has signed the writing.

S.C. Code Ann. § 37-10-107 (emphasis added). Here, the loan in question exceeds fifty thousand dollars and the parties agree none of § 37-10-107(3)'s exceptions apply. Thus, the Court finds the Lender Statute of Frauds applicable to Plaintiff's claim against Wells Fargo.

The Lender Statute of Frauds bars any action based on an alleged promise to lend money where the plaintiff has not received a writing, signed by the party to be charged, outlining the terms and specifications of the agreement. *Branch Bank & Tr. Co. v. Tech. Sols., Inc.,* No. 3:13-CV-01318-JFA, 2014 WL 691656, at *2 (D.S.C. Feb. 21, 2014). The Lender Statute of Frauds specifically "precludes an action" arising out of (1) an implied agreement based on course of dealing or performance or on a fiduciary relationship, (2) promissory or equitable estoppel, and (3) negligent misrepresentation, among other theories. S.C. Code Ann. § 37-10-107(2). In *Sea Cove Develop., LLC v. Harbourside Community Bank*, 387 S.C. 95 (2010), the Supreme Court of South Carolina held that letters stating an applicant was "conditionally qualified" for a loan do not fulfill the Lender Statute of Fraud's writing requirement. *Sea Cove Develop., LLC*, 387 S.C. at 107 (affirming grant of summary judgment to lender and finding letters stating a loan is "subject to" additional verification and has not yet been fully approved do not satisfy the writing requirement and cannot show a loan was "guaranteed").

In opposing Wells Fargo's Lender Statute of Fraud argument, Plaintiff states only the following:

> Wells Fargo argues that Plaintiff['s] breach of contract claim[] fails pursuant to the Lender Statue of Frauds because Plaintiff never received the signed writing from Wells Fargo prior to Wells Fargo notifying TruAuto that is financing request had been denied. First, Plaintiff did not receive the signed writing from Wells Fargo because Wells Fargo willfully refused to deliver it to Plaintiff and held it for two years even in the midst of litigation. Second, Wells Fargo cannot prove that Plaintiff ever received the financing denial letter they refer to because it was sent to the wrong address.

9

(Dkt. No. 108 at 7) (footnote omitted). Plaintiff cites no record evidence to support its contention that "Wells Fargo willfully [or otherwise wrongfully] refused to deliver [the IFA signed by Cohan to] Plaintiff." Further—and more importantly—Plaintiff does dispute the substance of Cohan's testimony regarding Wells Fargo's internal procedures regarding IFAs nor dispute that Plaintiff never received a signed writing from Wells Fargo indicating Plaintiff had satisfied all conditions necessary to activate its credit facility.

The Court finds that the undisputed record evidence, read in a light most favorable to Plaintiff, demonstrates Plaintiff's claim for breach of contract is barred by the Lender Statute of Frauds. Putting aside the undisputed fact that Wells Fargo never received notification from TSV that Plaintiff was "approved as a dealer of [TSV]'s products," the evidence described *supra* shows Plaintiff never received a signed writing from Wells Fargo indicating final approval of its credit facility. *See Sea Cove Dev., LLC.*, 387 S.C. at 107 (finding that a conditional approval letter does not satisfy the writing requirement of § 37-10-107); *Branch Bank and Trust Co.*, 2014 WL 691656, at *3 (granting summary judgment on defendant's counterclaim where defendant had not produced a writing signed by plaintiff evidencing final approval of the loan). This fact is fatal to Plaintiff's remaining claim against Wells Fargo.[2]

---

[2] In its briefing, instead of addressing Wells Fargo's argument on the merits, Plaintiff takes issues solely with how long it took Wells Fargo to produce the "signed" but unsent IFA.

> Michele Cohan, the Wells Fargo representative who signed the contract testified that she only first learned about this case in May 2021 when she was contacted by a paralegal at Wells Fargo regarding the Inventory Financing Agreement that Ms. Cohen signed. It is bewildering to Plaintiff how it took Wells Fargo, a company with enormous resources, staff, and counsel, two years to locate a document that Plaintiff was specifically concerned about and that is so critical to this case. Moreover, it is infuriating for Plaintiff who incurred significant legal costs fighting Wells Fargo's dismissal from this case, when, had the truth about this contract been revealed in May 2019, a very different case may have presented for Plaintiff.

Accordingly, the Court grants Wells Fargo summary judgment on Plaintiff's claim for breach of contract.[3]

## V.     Conclusion

For the foregoing reasons, the Court **GRANTS** Wells Fargo's motion for summary judgment (Dkt. No. 103) and **DENIES AS MOOT** Wells Fargo's motion to exclude (Dkt. No. 104).

**AND IT IS SO ORDERED.**

s/ Richard Mark Gergel
Richard Mark Gergel
United States District Judge

September 28, 2021
Charleston, South Carolina

---

(Dkt. No. 108 at 4) (internal citation omitted).

[3] Because the Court grants Wells Fargo summary judgment on Plaintiff's breach of contract claim under the Lender of Statute of Fraud, the Court does not reach the merits of other arguments raised by Wells Fargo in its motion for summary judgment. The Court notes, however, that putting aside the Lender of Statute of Frauds, Plaintiff's claim for breach of contract nevertheless fails on the merits. As detailed herein, the undisputed evidence shows Plaintiff did not satisfy all of Wells Fargo's conditions for obtaining the loan in question. Namely, Plaintiff did not become an authorized E-Z-Go dealer. *See* Order and Opinion, (Dkt. No. 116) (granting TSV summary judgment on Plaintiff's claim for breach of contract); (Dkt. No 103-10) (Revised Conditional Approval Letter requiring that, prior to activation, Wells Fargo receive notification from TSV that Plaintiff is an "approved dealer"); *see also Mears Grp., Inc. v. Kiawah Island Util., Inc.*, 372 F. Supp. 3d 363, 376 (D.S.C. 2019) ("The elements of an action for breach of contract are (1) the existence of a contract; (2) the contract's breach; and (3) damages caused by such breach.").